UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIE LEE SLATER,

    Petitioner,

v.                                                      Case No. 6:04-cv-1452-Orl-31KRS

JAMES V. CROSBY, JR., et al.,

    Respondents.

_____/

## **ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 13). Petitioner was given an opportunity to file a reply to the response, and did so (Doc. No. 23). Respondents filed a response to Petitioner's reply (Doc. No. 26), and Petitioner filed a reply to Respondents' response to the reply (Doc. No. 29).

Petitioner alleges nine claims for relief: (1) the trial court deprived Petitioner of his right to a fair hearing and his right to effective assistance of counsel at his post-conviction hearing by failing to provide Petitioner or his counsel with notice of the hearing; (2) trial counsel was ineffective for failing to properly investigate and present defense witnesses; (3) trial counsel was ineffective for persuading Petitioner not to testify at trial; (4) the trial court erred by allowing the victim to remain

in the courtroom during the State's opening statement; (5) trial counsel was ineffective for failing to object to the State's opening statement and for failing to move for a mistrial; (6) trial counsel was ineffective for failing to object to one of the statements made by the State during closing argument and for failing to move for a mistrial; (7) trial counsel was ineffective for failing to object or move for mistrial after the improper introduction of evidence of other crimes; (8) trial counsel was ineffective for failing to properly preserve for appellate review the issue of whether the victim should have been removed from the courtroom during opening statement; and (9) appellate counsel was ineffective for failing to file the complete record.

## I.     *Procedural History*

Petitioner was charged by information with four counts of burglary of a dwelling with an assault or battery (counts one through four), four counts of false imprisonment (counts five through eight), one count of aggravated battery with a firearm (count nine), and four counts of aggravated assault with a firearm (counts ten through thirteen). The State *nolle prosequied* counts two through four. A jury trial was conducted, and Petitioner was found guilty of the remaining ten counts charged in the information. After conducting a sentencing hearing, the trial court sentenced Petitioner to life in prison for burglary of a dwelling (count one), thirty years of imprisonment for aggravated battery (count nine), fifteen years of imprisonment for each of the four counts of false imprisonment (counts five through eight), and five years of imprisonment for each of the four counts of aggravated assault (counts ten through thirteen), all to run concurrently.

Petitioner appealed his convictions and sentences to the Fifth District Court of Appeal, which affirmed. On June 14, 2001, Petitioner filed a petition for writ of habeas corpus with the appellate court, and the petition was denied.

On November 20, 2001, Petitioner filed a motion for post-conviction relief with the state trial court. An evidentiary hearing was conducted on October 28, 2002, concerning two of the claims. However, because Petitioner indicated that neither he nor his retained counsel had received notice of the hearing, the trial judge postponed ruling on the motion until it could be determined whether Petitioner was actually represented by counsel. A month and a half after the October 2002 hearing, an attorney filed a notice of appearance on Petitioner's behalf. On February 20, 2003, the trial court conducted a second evidentiary hearing on Petitioner's post-conviction motion, and counsel represented Petitioner at the hearing. On March 19, 2003, the trial court denied the motion for post-conviction relief. Petitioner appealed the trial court's decision, and on May 11, 2004, the appellate court affirmed *per curiam*.

## II.   Analysis

### A.   *Non-Cognizable Habeas Claim*

In claim one, Petitioner asserts that the trial court deprived him of his right to a fair hearing and right to effective assistance of counsel at the post-conviction hearing by failing to provide him or his counsel with notice of the hearing. Essentially, this claim attacks the Rule 3.850 proceedings.

"A habeas petition must allege the petitioner's detention violates the constitution, a federal statute, or a treaty. . . . [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir.), *cert. denied*, 493 U.S. 1012 (1989). "Even where there may be some error in state postconviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim . . . represents an attack on a proceeding collateral to [the] detention of appellant and not on the detention itself. Moreover, because state postconviction proceedings are civil in nature, the sixth

3

amendment right to effective assistance of counsel does not attach." *Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir.), *cert. denied*, 469 U.S. 823 (1984) (quotation omitted) (citation omitted). "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in [state post-conviction] proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Because claim one alleges errors in the state post-conviction review process, it is not addressable through federal habeas corpus proceedings, and the claim must be denied.[1]

### B.    *Procedural Default*

The federal court must dismiss those claims or portions of claims that either (1) have been explicitly ruled procedurally barred by the highest state court considering the claims,[2] or (2) are not exhausted but would clearly be barred if returned to state court.[3]  Thus, "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law. In addition, the federal courts may not address claims that have not been presented in the state court

---

[1] Alternatively, this claim is procedurally barred because it was premised only on state law and was not raised as a federal constitutional claim in the state court. *See* App. B3 at 479-80; App. L at 14-15.

[2] *Harris v. Reed*, 489 U.S. 255 (1989).

[3] *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991) ("When a claim is never presented to the state court *Teague* does not require that the last state court rendering judgment 'clearly and expressly' state that its judgment rests on a procedural bar.").

if the state court would have found the claims to be procedurally defaulted . . . ." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).[4]

The United States Supreme Court has determined that in order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Conner*, 404 U.S. 270, 275-76 (1971)) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998).

Claim four, that the trial court erred by allowing the victim to remain in the courtroom during the State's opening statement at trial, was not raised as a federal claim in the state courts. Although this claim was raised on direct appeal, Petitioner relied only on state law to support the claim and did not indicate any federal constitutional basis or federal case law on which the claim was premised.[5] *See* App. C at 7-12. Thus, this federal claim has not been exhausted. Furthermore, it is obvious that this unexhausted federal claim would be procedurally barred if now raised in the state court. Accordingly, claim four appears to be procedurally barred in this Court.

---

[4] Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.), *cert. denied*, 513 U.S. 1061 (1994).

[5] The Court notes that Petitioner subsequently raised claim four as a violation of the United States Constitution in his motion for post-conviction relief. *See* App. L at 24-28. The state court found the claim was procedurally barred because it should have been raised on direct appeal. *See* App. B3 at 542.

However, there are two exceptions to the procedural default bar. First, a petitioner may overcome a procedural default by showing "both 'cause' for the default and actual 'prejudice' resulting from the default."[6] *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). The second exception, known as the "fundamental miscarriage of justice," only "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id*. In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actual innocence exception. A review of the record reveals that the Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claim four is procedurally barred.[7]

### C. Ineffective Assistance of Counsel

Claims two, three, five, six, seven, eight, and nine were decided on the merits by the state courts. For claims decided on the merits, 28 U.S.C. § 2254(d) enunciates the applicable standard of review which federal courts are required to use.

Section 2254(d) provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[6]"To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir.1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

[7]Alternatively, the Court notes that Petitioner has not indicated any federal constitutional right to invoke the rule of sequestration, thereby creating a due process right. Accordingly, claim four is without merit.

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001),

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.* Additionally, a determination of a factual issue made by a state court shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See id.* at 835-36; 28 U.S.C. § 2254(e)(1).

Claims two, three, five, six, seven, eight, and nine allege ineffective assistance of counsel. The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. Pursuant to *Strickland*, to establish a claim of ineffective assistance of counsel, the defendant must demonstrate that (1) counsel's performance was deficient and "fell below an objective standard of reasonableness," and (2) the deficient performance prejudiced the defense. 466 U.S. at 687-88. The Eleventh Circuit Court of Appeals has applied the

*Strickland* test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).

When considering whether counsel's performance is deficient, courts must presume that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989). To establish the prejudice prong, the defendant must show that there is a reasonable probability that but for his counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. However, in *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

The state court applied the test set forth in *Strickland* when considering claims two, three, five, six, seven, and eight. The state court, therefore, applied the relevant United States Supreme Court precedent. Therefore, the remaining question as to these claims is whether the state court's application of *Strickland* was objectively unreasonable. Claim nine was raised in a state habeas petition. The appellate court denied the claim without opinion. Accordingly, the Court must determine if the appellate court's decision was either contrary to or an unreasonable application of federal law.

### i.    Claim Two

Petitioner asserts that trial counsel was ineffective for failing to properly investigate and present Mickey Singh as an alibi witness. Respondents assert that trial counsel investigated whether Mr. Singh should be called to testify at trial and was not deficient for deciding not to call him as an alibi witness.

At the state post-conviction hearing, Petitioner stated that prior to trial he had told his trial counsel that he had an alibi witness, Mickey Singh, the individual for whom Petitioner was working when the offenses took place. *See* App. B at 36-37. Petitioner stated that he informed his trial counsel that he was at work at a paint and body shop when the offenses occurred, and Mr. Singh could verify this information. *Id.* at 34, 36.

Mr. Apfelbaum testified that Petitioner told him about a potential alibi witness, after which he contacted the individual and spoke with him. *Id.* at 40. Mr. Apfelbaum stated that after speaking with the potential witness, he concluded that he "would not be able to be an alibi witness. . . ." *Id.* Furthermore, Mr. Apfelbaum specifically testified that Mr. Singh could not recall "whether or not [Petitioner] was actually at his place of business at the date and time the crime occurred." *Id.* at 49.

At the hearing, Mr. Singh confirmed that Mr. Apfelbaum had contacted him regarding whether he could provide an alibi for Petitioner. *Id.* at 74-75. Contrary to trial counsel's testimony, however, Mr. Singh testified that he told Mr. Apfelbaum that on the day of the crime, Petitioner was working at his body shop from approximately 9:00 a.m. until 6:00 p.m. *Id*. at 75. Mr. Singh could not provide proof that Petitioner worked that day because he paid Petitioner in cash and did not have any records detailing the days that Petitioner had worked or was absent. *Id.* at 79. Furthermore, Mr. Singh testified that Petitioner had missed approximately seven or eight days during the six to seven

9

months he worked for him, but Mr. Singh did not know on what dates Petitioner was absent. *Id.* Mr. Singh also stated that he did not find out that Petitioner had been arrested until approximately three weeks after his arrest.[8] *Id.* at 80-81.

The trial court found that Mr. Apfelbaum was very credible. *See* App. B3 at 547. Therefore, the state court concluded that trial counsel was not ineffective for failing to call Mr. Singh. *Id*. at 546-47.

The trial court's conclusion that the testimony of Mr. Apfelbaum was very credible is entitled to deference. Although Mr. Singh testified that Petitioner was working at the time of the offenses, the trial court was entitled to find that Mr. Singh's recollection was not accurate given the five week lapse between the date of the offenses and the date Petitioner contacted Mr. Singh about being an alibi witness. Moreover, Mr. Singh admitted that he did not keep time records and that Petitioner had missed up to eight days of work, and did not know the dates of Petitioner's absences. Therefore, given that trial counsel spoke with Mr. Singh and determined that he was unable to provide Petitioner an alibi, counsel's performance was not deficient. Accordingly, this Court concludes that the state court's application of *Strickland* was not objectively unreasonable.

### ii. *Claim Three*

Petitioner asserts that trial counsel was ineffective for preventing him from testifying. Petitioner contends that he did not testify because trial counsel told him if he did testify, then (1) he

---

[8] The offenses occurred on July 13, 1998, at approximately 4:30 p.m. Petitioner was not arrested until July 31, 1998. Therefore, Mr. Singh did not speak with Petitioner or trial counsel concerning whether Petitioner had worked on July 13th until more than five weeks after the date of the crimes

10

could be cross-examined as to the violent nature of his prior felony convictions, and (2) defense counsel would lose the advantage of a closing rebuttal argument.

At the post-conviction hearing, Petitioner testified that trial counsel told him that if he testified the prosecution would be able to ask him specifics about his felony conviction for aggravated battery.  *See* App. B at 59.  Petitioner also indicated that trial counsel told him that he would "lose the sandwich in the closing arguments" if Petitioner testified.  *Id.* at 64.  Trial counsel testified, however, that he did not advise Petitioner that if he testified, then (1) he could be cross-examined as to the nature of his prior felony convictions or (2) the opportunity to present a rebuttal closing argument would be lost.  *Id.* at 39-40.   Additionally, trial counsel indicated that he advised Petitioner about the possible negative effect of testifying and that it was his opinion that he should not testify.  *Id.* at 41.  Mr. Apfelbaum also indicated that he advises his clients that the decision of whether to testify belongs to the client.  *Id.*  Mr. Apfelbaum testified that when a client indicates a desire testify despite his advice not to do so, he allows the client to testify.  *Id.*

The trial court heard the testimony of Petitioner and trial counsel and gave greater credit to trial counsel's testimony on this claim.  *See* App. B3 at 548.  Moreover, the trial court concluded that Mr. Apfelbaum's advice was appropriate based on the facts.  *Id.* at 547.  Nothing in the record warrants a conclusion that the state court's determination was incorrect.  Accordingly, the state court's application of *Strickland* was not objectively unreasonable.

### iii.     Claim Five

Petitioner contends that trial counsel was ineffective for not objecting to part of the prosecutor's opening statement and for failing to move for a mistrial after the prosecutor's statements were not borne out by the victim's testimony.  Specifically, Petitioner maintains that trial counsel

11

should have objected to the prosecutor's statements in opening argument that the victim would testify that (1) she was able to see Petitioner's gold teeth, and (2) Petitioner told her that she had better be glad that her niece was not there because if she was, he "would want to fuck her." *See* App. A at 15.

The trial court determined that Petitioner did not establish that he was prejudiced by trial counsel's failure to object to these statements or to move for a mistrial. *See* App. B3 at 544. The trial court reasoned that the victim testified that she was able to identify Petitioner by his clothes, shoes, and voice. *Id.* Furthermore, the trial court noted that the victim testified as to other inflammatory statements Petitioner made, such as when Petitioner told the victim "bitch, you gonna die, bitch." *Id.*

The record indicates that the victim testified that her identification of Petitioner was based on his clothing and shoes, his voice, and his face from his forehead down to his nose. The victim knew Petitioner, had seen him on previous occasions, and knew the sound of his voice. Therefore, although the victim did not testify that she saw Petitioner's mouth, she testified that she was certain of her identification of him. Furthermore, although the victim did not testify that Petitioner told her he "would want to fuck" her niece if she were present, the victim did testify that Petitioner told her he was going to kill her. Thus, testimony was elicited from the victim about some of the violent statements made by Petitioner during the offenses. Given the victim's identification of Petitioner and her testimony regarding the circumstances of the offenses, this Court finds that the state court's determination that prejudice was not established was not objectively unreasonable.

### iv. Claim Six

Petitioner asserts that trial counsel was ineffective for failing to move for a mistrial when the State improperly shifted the burden of proof to Petitioner during closing argument. The statements at issue relate to the victim's identification of Petitioner based in part on the clothing and shoes the perpetrator was wearing. The prosecutor stated:

> You know, there is no testimony in here that people are prone to, you know, seeing red and seeing red and falsely accuse. There is no expert testimony to suggest that that's something that happens all the time. That people you saw an hour - - you know, actually it would have been seven, or eight hours, and then you just transfer his face onto a perpetrator in the house. We don't have expert testimony in front of us which supports that conclusion.

(App. A2 at 259-60.) The prosecutor's comment, therefore, indicated that no testimony had been presented during the trial to support a finding that people project something they have seen on one individual, such as clothing, onto another individual.

The trial court denied relief on this claim, determining that the State's comment did not improperly shift the burden of proof to the defense. *See* App. B3 at 545. The state court found that the prosecutor did not specifically state that the defense failed to call witnesses. *Id.* Instead, the state court reasoned that the State made "general comments about the lack of evidence that might be helpful to the resolution of the case, not necessarily in favor of one party or the other." *Id.* The trial court concluded, therefore, that trial counsel was not ineffective for failing to object to such statements. *Id.*

The Florida Supreme Court has recognized certain exceptions to the prohibition on commenting on a defendant's right to testify or a defendant's failure to mount a defense by calling witnesses. One such exception is known as the "invited response" and permits the State to comment

13

on the evidence presented and not presented to counter direct statements made by the defense attacking the evidence presented. *See Rodriguez v. State*, 753 So. 2d 29, 39 (Fla. 2000) (noting the invited response exception); *see also Barwick v. State*, 660 So. 2d 685, 694 (Fla. 1995) (concluding that "in the context presented, the prosecutor's statement, 'what fact, what testimony, what anything have you heard as a result of him going down to that police station would create a reasonable doubt in your mind,' was not a comment on the defendant's failure to testify, but a direction for the jury to consider the evidence presented.").

In the instant case, the record indicates that during closing argument, defense counsel argued that although the victim saw Petitioner wearing red shoes a few hours before someone broke into her home wearing red shoes, such an occurrence was coincidental. *See* App. A2 at 223. Defense counsel asserted that the victim had clearly made a mistake in identifying Petitioner based on him wearing red shoes on the day of the offenses. *Id.* Presumably, the prosecutor in closing responded to defense counsel's argument by noting that no evidence had been presented supporting a finding that individuals project clothing onto other people hours after they see someone wearing an item of clothing. The Court concludes that reading the prosecution's statement in context, it was not a comment on Petitioner's failure to testify nor a comment on Petitioner's failure to mount a defense. Instead, it was an invited response intended to comment on the evidence presented establishing that Petitioner was one of the perpetrators.[9] Accordingly, the Court concludes that the state court's application of *Strickland* was not objectively unreasonable.

---

[9]To the extent that the comment may be deemed to be an impermissible comment on either Petitioner's failure to call witnesses or to testify, the Court finds that the statement was harmless beyond a reasonable doubt. *See Rodriguez*, 753 So. 2d at 39 (applying harmless error analysis to determine the effect of the prosecutor's improper comment). The evidence presented concerning the identification of Petitioner included testimony from the victim that she recognized Petitioner by his voice, clothing, shoes, and the portions of his face that she was able to see.

14

### v.   *Claim Seven*

Petitioner asserts that counsel was ineffective for objecting to the victim's testimony wherein she indicated that on one occasion she and her friend ran into Petitioner and her friend stated to Petitioner, "you see this face, I don't do - - I don't do dope. I don't do drugs. . . ." *See* App. A at 52. Petitioner contends that the comment was an impermissible comment on his character in violation of sections 90.402, 90.404, and 90.802, Florida Statutes.

The trial court determined that this testimony may have been objectionable hearsay. *See* App. B3 at 546. The trial court concluded, however, that defense counsel's failure to object to the testimony was not sufficient to establish deficient performance nor did the introduction of the testimony result in prejudice to Petitioner. *Id.* The trial court reasoned that the implication as to Petitioner's possible drug use was not a feature of the trial and did not result in prejudice sufficient to undermine its outcome. *Id.*

The state court's determination that prejudice did not result from trial counsel's failure to object to this statement is not objectively unreasonable. As noted previously, the victim testified throughout the trial about how she was able to identify Petitioner and as to the circumstances of the offenses. The victim's brief statement, which could possibly infer drug use by Petitioner, was a minor portion of her testimony. Trial counsel's failure to object to this comment cannot be said to have rendered the trial fundamentally unfair. Accordingly, the Court concludes that the state court's application of *Strickland* was not objectively unreasonable.

### vi.   *Claim Eight and Nine*

Petitioner maintains that trial counsel was ineffective for failing to properly preserve for appellate review the trial court's purported error in allowing the victim to remain in the courtroom

15

during the prosecutor's opening argument. Petitioner contends that trial counsel should have renewed his pre-trial objection to the victim's presence in the courtroom during the course of the trial. Similarly, Petitioner asserts that appellate counsel was ineffective for failing to include on appeal the portion of the record wherein trial counsel objected to the victim's presence in the courtroom.

The post-conviction trial court denied the claim of ineffective assistance because the trial judge noted trial counsel's pre-trial objection to the victim's presence in the courtroom and stated that the issue was preserved for appeal.[10]  *See* App. B3 at 542.  Likewise, the appellate court determined without opinion that appellate counsel did not provide ineffective assistance of counsel by failing to include the portion of the record wherein trial counsel objected to the victim's presence in the courtroom.  *See* App. I.

The Court concludes that both of these claims must fail because Petitioner has not established prejudice resulting from either trial or appellate counsel's performance. *See Alvord v. Wainwright*, 725 F.2d 1282, 1289-90 (11th Cir.) (holding that when no prejudice shown, there is no need to address a claim that counsel was deficient), *cert. denied*, 469 U.S. 956 (1984).  Petitioner has not

---

[10]The record supports the post-conviction trial court's conclusion that trial counsel objected to the victim's presence prior to trial and was told by the trial judge that the issue was preserved for appeal. Moreover, the Court recognizes that the State argued on direct appeal that this issue was not preserved for appeal because trial counsel failed to object during the trial and appellate counsel failed to include the portion of the record in which trial counsel objected. The appellate court denied relief on the claim concluding that there was nothing in the record to demonstrate that Petitioner objected to the presence of the witness. Therefore, it is not clear whether the appellate court based its decision on the pre-trial objection of trial counsel to the victim's presence or on appellate counsel's failure to include part of the record. Regardless of what the appellate court's reason was, however, it is clear that trial counsel was told by the trial judge that the issue was preserved for appellate review.

alleged how the victim's presence in the courtroom adversely effected the trial.[11]  The record indicates that the victim's testimony regarding the incident did not change based on the fact that she heard the prosecution's opening statement.  As noted in the analysis of claim five, in some instances the victim did not testify as the prosecution indicated she would during opening statement.  In other words, the victim did not conform her testimony to the prosecutor's opening statement.  Therefore, the Court concludes that Petitioner has not established prejudice, and state courts' application of *Strickland* was not objectively unreasonable.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Willie Lee Slater (Doc. No. 1, filed October 4, 2004) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Chambers at Orlando, Florida, this 25th day of October, 2006.

Copies to:
sc 10/25
Willie Lee Slater
Counsel of Record

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[11]To the extent that Petitioner contends he was denied his right to counsel based on the trial court's decision to allow the victim to remain in the courtroom, the Court concludes that this argument is unavailing.  Trial counsel was present throughout the trial.  Moreover, contrary to Petitioner's assertion, trial counsel did not waive opening statement, but instead reserved opening statement.